MICHAEL J. HEYMAN
United States Attorney

SETH M. BEAUSANG
WILLIAM R. REED
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: seth.beausang@usdoj.gov
Email: william.r.reed@usdoj.gov

DOMINICK D. GIOVANNIELLO
Trial Attorney, Tax Division
U.S. Department of Justice
150 M St NE, Room 2.604
Washington, D.C. 20002

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | No. 3:24-cr-00072-SAH-KFR |
| CLARIBEL TAN, | |
| Defendant. | |

This document and its addenda set forth completely the terms of the plea agreement between the defendant and the United States. This agreement is limited to the United States Attorney⬚s Office for the District of Alaska and the United States Department of Justice, Tax Division; it does not bind other federal, state, or local prosecuting authorities.

## PLEA AGREEMENT

## 1. Summary of Agreement

The defendant agrees to plead guilty to the following counts of the Indictment in this case:

- Count 1: Health Care Fraud, in violation of 18 U.S.C. § 1347, and

- Count 2: Attempt to Evade and Defeat Tax, in violation of 26 U.S.C. § 7201.

The parties stipulate that the Total Combined Offense Level for the defendant's convictions on Counts 1 and 2 is 30 after reduction for acceptance of responsibility and the zero-point offender reduction under USSG § 4C1.1, as set forth in Sections 5.2.1 and 5.2.2 of this Plea Agreement. The government agrees to recommend a downward variance under 18 U.S.C. § 3553(a) as set forth in Section 5.3 which will be equivalent to a 2-level downward departure. The government agrees to recommend a sentence of imprisonment at the low end of the United States Sentencing Guideline range that applies to the Total Combined Offense Level calculated by the parties and including the government's recommended variance.

The parties calculate that defendant will owe not less than $16,771,955 in restitution combined for Counts 1 and 2, jointly and severally with co-defendant Daniel Tan. The defendant agrees to the entry of a restitution order in an amount not exceeding $16,771,955.

The defendant shall jointly pay with co-defendant Daniel Tan $6,300,849 to the Clerk of Court not later than the day of her sentencing hearing towards her expected restitution obligation.

The defendant will admit the Criminal Forfeiture Allegations in the Indictment in

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

their entirety, will withdraw the claim and answer she filed and caused to be filed by Claribel K. Tan M.D., LLC, within 30 days of sentencing, and will not oppose motions for entry of default and default judgment in the civil forfeiture action *United States of America v. Approximately $7,050,042.23 in U.S. Currency, et al.,* No. 3:24-cv-00050-MMS (D. Alaska).

The United States agrees not to criminally prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the Indictment. Following the imposition of sentence, the United States agrees to dismiss the remaining counts in the Indictment as to this defendant.

The defendant will waive all rights to appeal the convictions and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the convictions and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the pleas.

The parties agree that this plea offer is contingent on co-defendant Daniel Tan also pleading guilty to Counts 1 and 2 of the indictment.

## 2. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement. Thus, the defendant may not withdraw from this agreement or the guilty plea if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## 3. Charges, Elements, Penalties, and Other Matters Affecting Sentence

### 3.1. Charges of Conviction

The defendant agrees to plead guilty to the following counts of the Indictment:

- Count 1: Health Care Fraud, in violation of 18 U.S.C. § 1347, and

- Count 2: Attempt to Evade and Defeat Tax, in violation of 26 U.S.C. § 7201.

### 3.2. Elements of the Charged Offenses

The elements of Count 1: Health Care Fraud, in violation of 18 U.S.C. § 1347, are:

1. The defendant knowingly and willfully executed or attempted to execute a scheme or plan to defraud a health care benefit program, or obtain money under the custody or control of, a health care benefit program by means of material false or fraudulent pretenses, representations, or promises;

2. The defendant acted with the intent to defraud;

3. The victims were health care benefit programs; and

4. The scheme or plan was executed in connection with the delivery or payment for health care benefits, items, or services.

The elements of Count 2: Attempt to Evade and Defeat Tax, in violation of 26 U.S.C. § 7201, are:

1. The defendant the defendant owed more federal income tax for the calendar year 2014 than was declared due on the defendant's income tax return for that calendar year;

2. The defendant knew that more federal income tax was owed than was declared due on the defendant's income tax return;

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

3. The defendant made an affirmative attempt to evade or defeat such additional tax;

4. In attempting to evade or defeat such additional tax, the defendant acted willfully.

### 3.3. Statutory Penalties

The maximum and minimum penalties applicable to the charges of conviction are:

Count 1: Health Care Fraud, in violation of 18 U.S.C. § 1347:

1. Imprisonment for not more than 10 years;

2. A fine of not more than $250,000;

3. Supervised release for not more than three years; and

4. A mandatory special assessment of $100.

Count 2: Attempt to Evade and Defeat Tax, in violation of 26 U.S.C. § 7201:

1. Imprisonment for not more than five years;

2. A fine of not more than $250,000; and

3. Supervised release for not more than three years;

4. A mandatory special assessment of $100; and

5. A mandatory assessment of the costs of prosecution.

### 3.4. Other Matters Affecting Sentence

#### 3.4.1. Conditions Affecting the Defendant☒ Sentence

The following conditions may also apply and affect the defendant☒ sentence:

1. Pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

not paid within 15 days after the judgment date.

2. Upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release.

### 3.4.2. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. A defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, may be denied citizenship, and may not be permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including denaturalization and removal from the United States.

### 3.5. Restitution

The defendant agrees to the entry of a restitution order imposed pursuant to 18 U.S.C. § 3663 in an amount not exceeding $16,771,955 and that the Court will have sole discretion ultimately to determine the final amount of restitution. The defendant retains the right to challenge any amount in excess of the agreed upon restitution amount stated above. Once the Court determines the final restitution amount, the defendant agrees to immediately pay full restitution as ordered by the Court.

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

The defendant shall jointly pay with co-defendant Daniel Tan $6,300,849 to the Clerk of Court not later than the day of her sentencing hearing towards her expected restitution obligation.

The defendant will be entitled to apply to the Court for a refund of any restitution overpayment.

### 3.6. Special Notice Regarding Restitution for Tax Loss

The defendant acknowledges she is jointly and severally liable for the full amount of the tax loss caused and intended to be caused by her and co-defendant Daniel Tan for tax years 2014-2021, as discussed in Section 4 of this agreement.

The defendant acknowledges and agrees to pay interest pursuant to 26 U.S.C. §§ 6601 and 6621 on the restitution amount pertaining to the U.S. Treasury. Interest runs from the last date prescribed for payment of the relevant tax liability until the IRS receives payment in full. Upon request of the defendant, the government will provide an updated interest figure at sentencing, and the defendant acknowledges that the interest remains a dynamic figure.

If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Per 26 U.S.C. § 6201(a)(4)(C), the defendant does not have the right to challenge the amount of this restitution-based

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

assessment. Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment, as permitted by law.

The defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. The defendant understands and agrees that the plea agreement does not resolve the defendant's civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from the defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise defendant's obligation to pay any remaining civil tax liability.

The defendant understands that they are not entitled to credit with the IRS for any payment until the payment is received by the IRS.

If full payment cannot be made immediately, the defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. The defendant also agrees to provide the above-described information to the probation office.

If the defendant makes a payment of the agreed-upon restitution prior to sentencing,

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

the payment will be applied as a credit against the restitution ordered.

The parties agree the Clerk of the Court will disburse the restitution payments to the IRS at the following address:

IRS ☐RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

The defendant gives up any and all objections that could be asserted to the Examination Division of the IRS receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

## 3.7. Forfeiture

The defendant admits the Criminal Forfeiture Allegations of the Indictment in their entirety, including any substitute asset and money judgment provisions, and that her interest, if any, in any of the property seized in connection with the investigation related to the Indictment and in the following property is subject to forfeiture to the United States:

- Approximately $7,050,042.23 in U.S. currency seized from Northrim Bank in account number ending in 250; and

- Investment assets with a value of approximately $3,421,064.20 seized form Vanguard Group, Inc., in account number ending in 132.

The defendant consents to the immediate entry of a Preliminary Order of Forfeiture as to the above property after the defendant☐ plea is taken by a United States Magistrate Judge or District Judge and that the Preliminary Order of Forfeiture is final as to the

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

defendant pursuant to Fed. R. Crim. P. 32.2(b)(4)(A). The defendant waives the requirements of Fed. R. Crim. P. 32.2 and Fed. R. Crim. P. 11(b)(1)(J) regarding notice of the forfeiture in the charging instrument and announcement of the forfeiture at sentencing. The defendant further waives all constitutional (including that the forfeiture constitutes an excessive fine or punishment) statutory, and equitable defenses to the forfeiture of the above property, including by direct appeal, habeas corpus, or any other means.

The defendant agrees not to file a claim, agrees to withdraw any previously filed claims, and agrees not to assist others in filing a claim, to any of the above referenced property in any administrative or judicial forfeiture or abandonment proceeding which has been or may be initiated by the United States, waives notice of any such proceeding, and consents to the forfeiture and abandonment of the property to the United States. This agreement does not affect or limit the government's ability to initiate or complete any administrative or civil forfeiture action. The defendant understands that, unless the Attorney General or an authorized designee determines otherwise, the forfeiture of assets described above shall not be counted towards satisfaction of any special assessment, fine, restitution, or any other penalty the court may impose.

The defendant further agrees to take all steps as requested by the United States to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture and pass clear title to the property to the United States, including, but not limited to, executing documents and testifying truthfully in any forfeiture proceeding.

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

The defendant understands and acknowledges that the United States is relying upon her truthful asset forfeiture disclosure and cooperation in entering into this plea agreement. The defendant's failure to cooperate or provide truthful information pursuant to these oblligations will constitute a material breach of this agreement.

Defendant agrees that the forfeiture provisions of this plea agreement will survive notwithstanding the abatement of any underlying criminal conviction on account of the defendant's subsequent death. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

Upon entry of a final order of forfeiture, the United States Attorney's Office agrees to make a non-binding recommendation, pursuant to 28 C.F.R. Part 9, to the Money Laundering and Asset Recovery Section (MLARS) at the Department of Justice that the assets obtained from the defendant through forfeiture be distributed to the victims of the offense in accordance with any restitution order entered in this case, through processes known as remission and/or restoration. The defendant acknowledges the recommendation of the United States Attorney's Office is not binding on the Chief of MLARS, and that if the Chief exercises her discretion to deny remission and/or restoration, the forfeited assets will be disposed of according to law.

## 4. Factual Basis

The defendant admits the truth of the allegations in the Indictment and of the

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

following statement:

Claribel K. Tan, M.D., LLC ("CKTMD"), was an Alaska limited liability company that operated a medical clinic in Anchorage, Alaska (the "Clinic"). Claribel Kohchet-Chua Tan was the sole member and manager of CKTMD and the sole physician working at the Clinic. Her husband, Daniel Tan, performed office and management work for the Clinic.

Claribel Tan was a rheumatologist specializing in the diagnosis and treatment of diseases autoimmune and musculoskeletal diseases, such as rheumatoid arthritis, osteoarthritis, and psoriatic arthritis. Many of the conditions Claribel Tan treated, including rheumatoid arthritis, were chronic, degenerative, and irreversible. For example, rheumatoid arthritis ("RA") is a painful condition in which a person's immune system attacks the tissue lining his or her joints. RA can cause inflammation in the joints and other parts of the body, including the skin, eyes, lungs, heart, and blood vessels, that, if left untreated, can lead to irreversible damage and/or severely impact a person's ability to function. Modern medical treatments, including the Subject Medicines, can help arrest the progression of the disease but cannot reverse the damage caused by it.

From at least 2012 through 2024, the Tans committed Health Care Fraud, causing an estimated actual loss of approximately $12,522,446.35 to more than 10 health care benefit plan victims. The Tans also committed Tax Evasion, causing an estimated tax loss of $4,249,509.

<u>Count 1: The Tans committed Health Care Fraud</u>

The Tans committed Health Care Fraud via two interrelated methods: the

Medication Method and the Prolonged Services Method. Using both methods, the Tans obtained, by their materially false and/or fraudulent pretenses, representations, or promises, money and/or property owned by, and/or under the custody or control of, health care benefit programs.

To accomplish the Medication Method, the Tans knowingly and willfully submitted false claims and/or caused the submission of false claims to health care benefit programs for reimbursement of the cost of Subject Medicines (defined below) that they knew the Clinic had not purchased and that Claribel Tan had not given to patients. Between 2009 and 2024, the Tans billed the health care benefit programs for 4,829 units of the Subject Medicines, despite only purchasing 369 units of the Subject Medicines during that period. Despite learning of the government's criminal investigation in July 2019, the Tans continued to bill for Subject Medicines the Clinic had not purchased or administered.

The Subject Medicines were biological products ("biologics"), described by the Food and Drug Administration as "often represent[ing] the cutting-edge of biomedical research and [which], in time, may offer the most effective means to treat a variety of medical illnesses and conditions that presently have no other treatments available." The Subject Medicines were intended primarily to treat RA and psoriatic arthritis, and included: Cimzia, Stelara, Humira, Prolia, Enbrel, Kenalog, Cosentyx, Simponi, and Synvisc. The Subject Medicines required regular injections and dosages to be effective and tended to be especially expensive. For example, the Tans received an average of approximately $12,121 per unit of Stelara they billed to the health care benefit programs. The Tans knew that

failing to administer the Subject Medicines (including the prescribed doses) could result in substantial harm to the patients by, among other things: (1) failing to arrest the progression of the patients□conditions, resulting in irreversible damage to the patients□joints and other bodily members/functions; (2) reducing the Subject Medicines□efficacy at treating the patients□ conditions and/or causing the patients to develop a resistance to other medications; and (3) worsening other underlying conditions, such as prediabetes.

Instead of injecting patients with the medications that Claribel Tan prescribed and for which the Tans billed, Claribel Tan routinely underdosed patients; injected them with free samples of the prescribed Subject Medicine or of a different medication; injected them with expired Subject Medicines; and injected them with medications purchased by other patients and intended for self-injection by those other patients at home.

Claribel Tan knowingly deceived patients regarding the identity and quantity of the substances that she injected into their bodies by, among other things: concealing hypodermic needles beneath a clipboard, or behind her back, to prevent the patient from recognizing the medication was not that which Claribel Tan claimed it to be; falsely telling patients they needed to receive injections at the Clinic by Claribel Tan even though it is common for patients to self-inject at home; falsely telling patients what she was injecting them with; and making false statements in medical records regarding the identity and quantity of substance she injected into patients.

Daniel Tan knew that Claribel Tan was not injecting the medicines she told patients they were receiving and that the medical records were false. Daniel Tan knowingly created

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

and submitted fraudulent claims to the health care benefit programs, ordered insufficient medication for the Clinic, created false tax records to conceal the health care fraud scheme, and deceived patients about their treatment options and the services they received from the Clinic.

To accomplish the Prolonged Services Method, Claribel Tan made false statements in medical records about the length of time she treated patients in the office and treatment she provided. Daniel Tan knew that Claribel Tan made false statements in medical records about the length of time she treated patients in the office and treatment she provided. The Tans knowingly and willfully submitted false claims and/or caused the submission of false claims to health care benefit programs for reimbursement of the prolonged services that were not provided.

The actual health care fraud loss that the Tans caused through the Medication Method and the Prolonged Services Method, is approximately $12,522,446, subdivided as follows:

- Medication Method: Approximately $11,135,608; and

- Prolonged Services Method: Approximately $1,386,838.

<u>Count 2: The Tans committed Tax Evasion</u>

In or around late 2016, the Tans attempted to evade assessment of their $2,870,794 total tax due and owing for 2013-2017 by providing false information to their tax return preparer and by willfully filing fraudulent Forms 1040 and Forms 1120-S for 2014, 2015, and 2017.

After receiving multiple notices from the IRS regarding their failure to file their personal, Forms 1040, or CKTMD's corporate, Forms 1120-S, tax returns for tax years 2011-2015, the Tans retained an Alaska-based tax return preparer to prepare their unfiled tax returns.

For tax years 2013 through 2017, Daniel Tan intentionally provided the return preparer with spreadsheets that fraudulently overstated, among other things, the Tans' cost of "medical supplies," whereas the Tans knew at the time that their actual cost of "medical supplies" was substantially smaller because they knew the Clinic was not purchasing the Subject Medicines that the Tans sought reimbursement for from health care benefit plans.

The return preparer relied on the information provided by Daniel Tan and input the fraudulent cost of "medical supplies" from the spreadsheets as "cost of goods sold" ("COGS") on CKTMD's Forms 1120-S for 2014, 2015, and 2017. In or around 2019, after learning the Tans were under federal investigation, but prior to completing their 2013 and 2016 tax returns, the return preparer fired the Tans as clients.

The fraudulently inflated COGS reported on CKTMD's Forms 1120-S reduced CKTMD's taxable income, which flowed through to the Tans' Forms 1040, thereby reducing the Tans' tax liability for 2014, 2015, and 2017, and creating an additional tax due and owing. Claribel Tan willfully signed and submitted 2014, 2015, and 2017 Forms 1120-S that fraudulently overstated CKTMD's cost of goods sold and understated its income. Both Daniel and Claribel Tan willfully signed and filed 2014, 2015, and 2017 joint Forms 1040 that fraudulently understated their taxable income.

In total, Claribel and Daniel Tan evaded a tax due and owing for 2013-2017 of approximately $2,870,794.

In addition to tax evasion described above, the Tans also committed Failure to File, in violation of 26 U.S.C. § 7203, for the tax years 2018 through 2021.

For tax years 2018-2021, Claribel Tan willfully failed to file any Forms 1120-S for CKTMD, despite knowing that CKTMD was legally required to file in each of those years. As the sole shareholder of CKTMD, Claribel Tan was responsible for filing CKTMD's tax returns, Forms 1120-S, and was required to report CKTMD's business income as flow-through income on her individual tax returns, Forms 1040. For tax years 2018-2021, Claribel Tan also willfully failed to file any Forms 1040, despite being required to by law, as her flow-through income from CKTMD and income from other sources exceeded the statutory filing requirements for 2018-2021.

After accounting for estimated tax payments she made between 2018-2021, Claribel Tan's willful failure to file 2018-2021 Forms 1120-S and Forms 1040 caused a tax loss of $1,218,687.

For tax years 2018-2021, Daniel Tan willfully failed to file any tax returns, Forms 1040, despite being required to by law. Daniel Tan's gross income exceeded his statutory filing requirements for 2018-2021.

The tax loss from Daniel Tan's willful failure to file 2018-2021 Forms 1040 is approximately $160,028.

The following summarizes the offense conduct and tax losses regarding both Tans:

| Underlying Conduct | Restitution Amount |
|---|---|
| Evasion of assessment (2013-2017) | $2,870,794 |
| Claribel Tan's failure to file (2018-2021) | $1,218,687 |
| Daniel Tan's failure to file (2018-2021) | $160,028 |
| **Total** | **$4,249,509** |

The parties agree that the Court may rely upon this statement to determine whether there is a factual basis to support the guilty plea, to determine the relevant conduct applicable for purposes of the United States Sentencing Guidelines, and to evaluate the proper sentence under the criteria set forth in 18 U.S.C. § 3553(a).

## 5. The United States Sentencing Guidelines, Guideline Application Agreements, and Sentencing Recommendations

### 5.1. Advisory U.S. Sentencing Guidelines

The defendant acknowledges that the Court will consult the advisory United States Sentencing Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The Guidelines do not establish the statutory maximum or minimum sentence applicable to the offenses to which the defendant is pleading guilty. The Guidelines are not mandatory, and the Court is not bound to impose a sentence recommended by the Guidelines.

### 5.2. Guideline Application Agreements

All agreements regarding Guidelines applications are set out in this section.

### 5.2.1. Total Combined Offense Level Calculation

Subject to Section 5.2.2 of this Plea Agreement, the parties agree to jointly

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

recommend that the Court apply the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

<u>Count 1</u>

| | |
|---|---|
| Base Offense Level, USSG § 2B1.1(a)(2), | 6 |
| Amount of Loss, USSG § 2B1.1(b)(1)(K) | +20 |
| +10 victims, USSG § 2B1.1(b)(2)(A) | +2 |
| Loss to government health care program, > $1,000,000, USSG § 2B1.1(b)(7)(B)(i) | +2 |
| Risk of Serious Bodily Injury, USSG § 2B1.1(b)(16) | +2 |
| Abuse of position of trust, USSG § 3B1.3 | +2 |
| Zero-point offender, USSG § 4C1.1 | -2 |
| | |
| Total Offense Level for Count 1: | 32 |

<u>Count 2</u>

| | |
|---|---|
| Base Offense Level, USSG § 2T1.1(a)(1) (tax loss > $3.5 million) | +24 |
| Failure to report >$10,000 in income from criminal activity, USSG § 2T1.1(b)(1) | +2 |
| Zero-point offender, USSG § 4C1.1 | -2 |
| | |
| Offense Level for Count 2: | 24 |

| | |
|---|---|
| <u>Grouping adjustment</u> 1.5 Units, USSG § 3D1.4 | +1 |
| | |
| <u>Total Combined Offense Level</u>[1] | 33 |

### 5.2.2. Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to

---

[1] Subject to Section 5.2.2 (Acceptance of Responsibility).
U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

recommend the defendant for a two-level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility□ including by inappropriately seeking to delay sentencing□ the United States will not make or, if already made will withdraw, this recommendation and motion.

### 5.3. Sentencing Recommendations

The United States will recommend a downward variance under 18 U.S.C. § 3553(a) for the following reasons: the defendant□s agreement to not contest the forfeiture of seized assets and advance payments towards restitution, the defendant□s age, the defendant□s lack of a criminal history, low risk that the defendant will execute a similar health care fraud scheme in the future, and the defendant□s waiver of her appeal rights. The variance will be in an amount equivalent to a 2-level departure.

The United States Probation Office will prepare the defendant□s presentence report in which it will include a recommended calculation of the defendant□s sentence range under the U.S.S.G. The Court is free to accept the guideline calculations as set forth herein or as recommended by the U.S.P.O. In the event that the Court adopts a guideline calculation different that as agreed upon by the parties herein, the United States will nonetheless recommend that defendant serve a term of imprisonment at the low end of the sentencing guideline range that applies after the Total Combined Offense Level is calculated as set

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

forth in Sections 5.2.1 and 5.2.2 of this Plea Agreement, and after considering the government's recommended variance.

The parties are otherwise free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on any relevant criteria, including the stipulated facts set forth in Section 4, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory Sentencing Guidelines and the sentencing factors set forth in 18 U.S.C. § 3553.

The defendant acknowledges that the United States is obligated to provide the Court with truthful and relevant information that may inform the sentencing decision, and that doing so will not entitle her to rescission of this agreement so long as the United States does, in fact, recommend a sentence that is not inconsistent with this agreement.

## 6. Additional Agreements by the United States

In exchange for the defendant's guilty plea and the Court's acceptance of the defendant's plea and the terms of this agreement, the United States agrees that it will not criminally prosecute the defendant further for any other offense now known arising out of the subject of the investigation related to the charges brought in the Indictment in this case and the defendant's admissions set forth above.

However, if the defendant's guilty plea or sentence is rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case notwithstanding any term of this agreement, to include any charges dismissed

thereof. The United States shall be entitled to the automatic reinstatement of any such dismissed charges. As an express term of this agreement, the defendant hereby agrees that to waive any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## 7. Additional Agreements by the Defendant

### 7.1. Waiver of Trial Rights

By pleading guilty pursuant to this agreement, the defendant intentionally and voluntarily waives the following trial rights:

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have counsel appointed at public expense to represent the defendant at trial;

- The right to confront and cross examine witnesses against the Defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

## 7.2. Waiver of Appellate Rights

The defendant waives the right to appeal any conviction for any of the charges set forth in this agreement. The defendant further waives the right to appeal any sentence imposed pursuant to this agreement, except on the grounds that the sentence exceeds the maximum term authorized by statute. The defendant understands that this waiver includes, but is not limited to, the length of any term of imprisonment; forfeiture (if applicable); length, terms, or conditions of probation or supervised release (if applicable); any fines or restitution; and any and all constitutional or legal challenges to any conviction or guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support a plea of guilty.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement.

## 7.3. Waiver of Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack any conviction or sentence imposed pursuant to plea agreement, or any portion thereof, including the length of any term of imprisonment; forfeiture (if applicable); length, terms, or conditions of

probation or supervised release (if applicable); any fines or restitution; and any and all constitutional or legal challenges to any conviction or guilty plea. The only exceptions to this collateral attack waiver are: a challenge to the conviction or sentence alleging ineffective assistance of counsel, based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; or a challenge to the voluntariness of the defendant's guilty plea. The scope of this waiver applies to a collateral attack brought in any procedural vehicle, including but not limited to a challenge brought pursuant to 28 U.S.C. § 2241 or § 2255. The filing of such a challenge shall constitute a material breach of this agreement.

## 7.4. Waiver of Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By pleading guilty pursuant to this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement. The defendant agrees that the statements made in pleading guilty shall be deemed usable and admissible in any subsequent proceeding, regardless of whether the plea agreement or any other portion thereof is subsequently withdrawn or rescinded. The foregoing provision acts as a modification and express waiver of the provisions of Fed. R. of Evid. 410 and Fed. R. Crim. P. 11(f), and is effective upon the defendant's in-court admission to the factual basis. This provision applies regardless of whether the Court accepts this plea agreement.

## 7.5. Consent to Plea Before Magistrate Judge

The defendant has the right to enter a plea before a United States District Judge. The defendant, defense counsel, and the attorney for the government consent to have the defendant's plea taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11

and 59. The parties understand that if the Magistrate Judge recommends that the plea of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections (if any) to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case.

### 7.6. Agreement to be Sentenced Within 120 days of Entering a Plea

The defendant agrees to be sentenced within 120 days of appearing before the Court to enter a guilty plea. The defendant acknowledges that if she seeks to delay sentencing past that time without the prior consent of the United States, this conduct will be considered inconsistent with acceptance of responsibility and will forfeit any entitlement to a Guidelines reduction for acceptance of responsibility. The United States acknowledges that a delay beyond 120 days in sentencing attributable to the Court, the government, or other factors beyond the defendant's control will not be considered inconsistent with acceptance of responsibility.

### 7.7. Release Pending Sentencing

The defendant acknowledges that once her plea of guilty is accepted by the District Judge, it will be her burden to demonstrate by clear and convincing evidence that she is not likely to flee or pose a danger if she wishes to be released pending sentencing. As an express term of this plea agreement, the defendant agrees to abide by all release conditions that may be imposed and acknowledges that her failure to comply with any such condition may result in her detention pending sentencing, and that such failure will constitute a

material breach of this agreement, and will entitle the government, at its option, to make a sentencing recommendation different from that set forth above, or to rescission of this agreement altogether.

### 7.8. Payment of Monetary Penalties and Cooperation with Financial Investigation

The defendant agrees that any monetary penalties imposed (including any fine, forfeiture, restitution (including restitution payable to the IRS), or assessment) will be subject to immediate enforcement as provided in 18 U.S.C. §§ 3613 & 3663(a)(3) upon entry of judgment. The defendant acknowledges that any monetary penalties or forfeiture money judgment will be submitted to the Treasury Offset Program so that payments to the defendant may be applied to federal debts.

Within 30 days of the entry of the guilty plea in court, the defendant agrees to truthfully complete under penalty of perjury a financial statement provided by the United States Attorney's Office, and to update the statement within 7 days of any material change. The defendant further agrees to make full disclosure of all current and projected assets to the U.S. Probation Office before imposition of sentence and again before termination of supervised release or probation, such disclosures to be shared with the United States Attorney's Office.

The defendant agrees not to oppose the government's motion to restrain any assets of the defendant or co-defendant Daniel Tan that the government determines are necessary to preserve sufficient assets available to satisfy the defendant's restitution judgment. The defendant further agrees not to oppose the government's motion for a writ of garnishment

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

of any assets needed to satisfy the defendant's restitution obligations.

## 7.9. Breach and Other Circumstances Entitling the Government to Relief

The defendant acknowledges that, if the United States demonstrates by a preponderance of the evidence that he/she has failed in material way to perform any obligation set out in this agreement, the United States is entitled, at its option, to recission of this agreement. This entitlement supplements, and does not replace, any other form of relief that the United States might be entitled to in the event of a breach, to include any other specific remedy set out under the terms of this plea agreement. The defendant acknowledges if the plea agreement is rescinded, the defendant's admission to the factual basis will be admissible against the defendant as specific in Section 7.4 of this agreement.

## 8. The Parties'Acceptance of this Agreement

I, CLARIBEL TAN, the defendant in this case, affirm this document contains all of the agreements made between me (with the assistance of my attorney) and the United States regarding my guilty plea. There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I appear to enter my plea.

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

I enter into this agreement voluntarily, with the intent to be bound, and with a full understanding that the concessions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill my obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand and agree that the government's burden to prove a breach will be by a preponderance of the evidence.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter a guilty plea. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea. My attorney and I have discussed all possible defenses to the charges contained in the Indictment. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the Guidelines may have on my sentence. However, I understand that my attorney cannot guarantee any particular sentence except as set out herein, and I expressly acknowledge that my decision to plead guilty is not based on a belief that I am certain to receive a particular sentence that is not set out in this agreement.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Count 1: Health Care Fraud, in violation of 18 U.S.C. § 1347, and Count 2: Attempt to Evade and Defeat Tax, in violation of 26 U.S.C. § 7201, as charged in the Indictment, and I admit the Criminal Forfeiture Allegations in the Indictment in their entirety.

DATED: 10/23/25

CLARIBEL TAN
Defendant

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charges to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant☐s competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant☐s competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 10/23/25

DUNNINGTON BAAB
Attorney for Claribel Tan

On behalf of the United States, I accept the defendant☐s offer to plead guilty under the terms of this plea agreement.

MICHAEL J. HEYMAN
United States Attorney

DATED: 11/13/25

SETH M. BEAUSANG
Assistant United States Attorney
United States of America

U.S. v. Claribel Tan
3:24-cr-00072-SAH-KFR